Please support and counsel. My name is Tom Hayton. I represent YS Built. I'll probably refer to that just for habit as YSB. This is a infringement case over architectural works. I will cover, after introducing the parties, infringement and the subset of license, breach of contract and attorney's fees. Those are the issues covered by the three briefs. I will try not to just simply repeat the briefs but highlight them. YS Built is a design builder of both single residences. They're all generally residences. There are some commercial properties. But when doing clusters of houses, which is the example here, it makes or arranges for compatible design of both style and expense. Generally speaking, the expense is middle range to high range. And they pride themselves in materials and techniques. The appellee, the defendant in our case, is the parents, are the parents. Judge, I think the court is quite familiar with the facts. You can use your time any way you want, but you don't have a lot of time. You may want to get straight to the argument. The emphasis I want to put on here is that the arrangement for the contract was done with the son. And the parents wanted a substantial reduction in cost below the estimate. It's my understanding that you need to prove, in order to win here, that you have an ownership of a valid copyright. Yes. And that the copying of the constituent elements of the work that are original, so we're talking about access and substantial similarity, would you agree? Yes. And nobody's arguing about access. No. But we're really talking about substantial similarity. Well, we're also talking, yes, that's the principal issue. So you've got to prove both extrinsic and intrinsic? Certainly. We also have to prove the copyright, and there's no— And what challenge do you make to the intrinsic findings? Okay. I really didn't find any challenge to the intrinsic findings. Oh. That's a finding of fact. Don't you have to show clear error? Yes. No, the— No, it's a finding of fact. Findings of fact are reviewed for clear error. Is that not the case? The cases that we've cited and were actually accepted by the opponent refer to the application of the Copyright Act, the interpretation and the application of the Copyright Act to the facts. Yes, there are some questions about interpretation or creation of the facts in the first place. And, yes, certainly there are fact questions. However, there is a lesser degree of deference where the facts are documents. And in our case, the building had not been built, so the documents had to be the drawings, the models, and the sketches that were made from the drawings as exemplary. So in any case, in essentially any appeal, there will be some findings of fact. We're prepared, and we at least tried to show that they were not substantial and substantially supported by the evidence. But how is that not a complete review of the evidence and trying to replace the district judge's opinion with regard to substantial similarity with our own opinion? And my reading of the case suggests that the deference is particularly strong or particularly appropriate when you have intrinsic similarity issues because it's so subjective. Let me get to the intrinsic test then. There still has to be support. There has to be support in what Judge Rothstein found. And on the intrinsic or the discussion of the elements, which is to what that test applies, we had unrefuted proof of a number of different similarities. In fact, the entire testimony and evidence was of comparability. There was no refutation. We had one expert and three witnesses, one being the defendants, Mr. Washburn, who conceded that this was substantially comparable. There is no testimony. Now, where is that cited in your brief? Because I did not see that. And based on review of the evidence by the district judge, he came to a totally different conclusion. He dealt with both experts, his battle of the experts to a certain extent, plus his own view of the intrinsic evaluation. There was no expert for the defendant. The question of substantial comparability seems to me to go mostly to the question of extrinsic, because the intrinsic is very impressionistic. That is, does it convey a different impression, does it have a different feel to it? And that's what Judge Rothstein did. She cited very, very specific things and said it's very different on the bottom floor. You've got the walls removed. You've done something entirely different. You've got a lot more walls. The experts said that helped make it cheaper than having an open, airy feel. So where's the clear error in Judge Rothstein's findings on the intrinsic? There is no adjustment to make it any more open, and it's clear on the- There is no adjustment to make it more open? No. They didn't change the walls in the basement, for example, on the first floor? No. They added a room in the basement. Her description of-let me address this. First, let me please address the lack of evidence on the extrinsic. Counsel, I think she went on intrinsic. I'd like you to address the intrinsic, and you want to tell me that it's clear error? Tell me it's clear error, because if you lose on intrinsic, you lose. Are we talking about the accumulation of elements or the individual elements? Intrinsic has to do with the overall impact on the viewer. Okay. And I don't recall you even dealing with that in any material, substantial way in your brief. Really? Almost conceding that point. That's what I was suggesting. This is dealt with on pages 4 and 5 of Judge Rothstein's opinion. Actually, 4 to about 6. And she begins by saying, look, there are objective similarities, no question. Butterfly roof, you look at the sort of the front view, looks a little different, but, you know, it looks sort of got the same sort of boxy feel. She acknowledges all of that and then tells you very specifically why she thinks it's different. She does in both cases, the extrinsic and the intrinsic. Our brief addresses both. On the intrinsic, she has found it to be substantially different intrinsically because it is an application of the original design, changing it from an artistic and expressive original to a utilitarian and cheaper copy. That's what she said on page 5. And there is no case that says that that is a sufficient extrinsic difference. Is there any case that says that's not appropriate? It is inherent in the definition or in the argument over extrinsic differences. Counselor, you keep wanting to talk about extrinsic. I'm sorry, intrinsic, right. And I have been using it. The Schneider plan was airy, it was a light structure, relatively minimalistic and spare. Stanbrook was utilitarian and pragmatic, reflected in the $300,000 lower price. Difference, right. Where's the clear error here?  If you can see the original in the copy, whether the adjustments were made for economical purposes or not, it is intrinsically comparable in the court's view. There is a case cited for the proposition that merely saving money and changing things does not make the design different, and that's Arthur Rutenberg. There are no Ninth Circuit or Court of Appeals decisions that we can find either way. There's nothing cited on either side. But I think those do not help you. If that is actually the truth, and there's no legal basis to suggest that the judge erred here, we're only talking about then, after a three-day bench trial, that the judge somehow clearly erred in her idea about what the facts were. That's why you've had the questions you've had. Yes, I understand that's why I have had the questions. I mean— She says there's no intrinsic similarity. The architectural plans have a different concept and feel, airy, light structure focused on aesthetic value rather than utility as a dwelling. New ones, more utilitarian, pragmatically focused, incorporated a closed wall and more confined floor plan driven by cost-conscious and practical considerations. Yes. And frankly, I look at that and I say, what is the clear error? First of all, there are no—that subset that you mentioned, Your Honor, of straight lines—I'm sorry, solid lines and distinct room functions is not present in the documents. It is comparable in both cases, or it's true in both cases. Was there a theater in the Schneider plan? I was talking about the line and the definition, and there is no theater in the Schneider plan. It was a crawl space. The individual rooms? Yes, yes. Well, I looked side by side, and that was part of the trial exhibits. Yes. Side by side, they had these diagrams that showed one plan versus the other plan, and you'd look at them, and I didn't see anything that showed that one was anything similar to the other, that the Stanbrook was similar to the Schneider. It showed me just the opposite. I know one of the main points you try to make is the butterfly roof, which is a style, I guess, for a roof, but I'm looking at pictures right now, exhibits 000143-46 and 173-74, and they don't look anything alike. The roof design is very different. One looks like a nice, healthy butterfly. The other looks like a butterfly with a broken wing. One has two levels. One has four levels. I don't see how anybody looking at this would say that one is a copy of the other or one is substantially similar to the other in the design. They're both, well. . . I'm not just looking at the document right now. Right, and the plan that makes this most obvious or the exhibit that makes this most obvious in terms of the solidity of wall and confinement of design room is D-40. The record or the brief is full of references to specific studies of comparability, both on the plan view as well as the elevations. That's what the trial is about, a three-day trial. You put your evidence on, the other side put its evidence on, the judge in exercising her discretion said, I looked at the plans, heard the testimony, compared the photographs and the models that were presented to her and said, I find that there is no intrinsic similarity, substantial similarity. There is also no basis for saying, no authority for saying that if the distinction is because one is definitively and purposefully cheaper. But that's not what she did. That wasn't. . . Yes, she did. She gave the full explanation as to her intrinsic finding. That one is artistic and expensive and the other is utilitarian and cheap, but they both follow the same model. The second one was devised to try to replicate the first one deliberately and used the drawings, the original drawings, to get there. That creates a derivative work. The district judge conceded there was some copying, but explained why those were not protected features, which is into the extrinsic. Yes. She also said that the, well, I think she said there was copying, but the evidence was quite clear. There is nothing that said there was not. She agreed there was some copying, but she explained why the copying was not protected copying. It was technically started from the original drawings. And she explained that. She explained that they already had obtained the building permits from the city and that they didn't want to have to start over again, so they did effectively start with the footprint. Right. Is the footprint a copyrightable feature? It's part of the copyrighted drawings. So if somebody used the same footprint but designed a completely different house, that would violate the law? No, I don't think so. It would be evidence, perhaps, of partial copyright infringement. But the only testimony about the remainder of the drawings was that it was connected to the footprint that was copied. The testimony about it being necessary or being code-related is wrong. And we demonstrated why it was wrong. The evidence, the defense evidence, stated that the footprint was necessary or at least it would take a long time to get permission to do it. And that's not true. You've now exceeded your time. I will allow you time. You're a minute 40 over your time. You've got a red light on. I'm sorry. You've consumed more than 16 minutes at this point. I will allow you a minute for rebuttal, but we should hear from your opponent. All right. Thank you, Your Honor. Good morning, Your Honors. My name is Christian Linville, and I'm the lawyer for the appellees, the Huangs. And I will keep my comments brief. Regarding the copyright infringement claim, the district court clearly applied the correct analysis, the two-part test. There's the extrinsic part and the intrinsic part, and the court covered both of those. The district court pointed out in particular the perhaps foremost prominent similar features between the two designs in question and extrinsically looked at those elements, namely the butterfly roof, the footprint, the east elevation, and the contemporary look to the house. And in each of those cases, the doctrines of merger and senes affair, I'm sure I'm not pronouncing that right, but those two doctrines explained the similar features between the two designs. And I would just point out that both designs are contemporary, as the district court also pointed out, and such things like the butterfly roof are part of a contemporary look for a house. And with regard to each one of these extrinsic elements, they are not identical. The appellants have tried to use language that tries to capture a concept where the second design, the Stanbrook design, was somehow a derivative of a template from the Schneider design. But that process never happened. Stanbrook did have a physical copy, or they were given a physical copy of the Schneider plans, but they weren't in an editable format. And the only thing that was copied, per se, was the footprint. And even the footprint in the Stanbrook plans is not identical, not verbatim as the appellants used that word. It is different. And you can see Stanbrook stayed within that footprint because they felt that was the most practical thing to do because of the land use permit. This is on a steep slope. And the changing, if they went outside the footprint, it would require a new permit process, and they may not obtain that permit. But the footprint also, just before I leave that, is also heavily dictated by the lay of this lot, as the district court pointed out correctly. When an idea, as in the location of a house situated on a lot, is when an idea is so closely related to the expression of the idea, the doctrine of merger kicks in and provides a very thin, thin level of predictability in those situations, especially when the expression is limited to only a few options, such as a perfect example is the footprint. Mr. Neunfeld, can I shift to another subject? Yes. The breach of contract. The district judge found there was, at best, an agreement to agree, which is unenforceable under Washington law. The appellant says that the judge had in mind a different contract than they were pursuing in this case, that the agreement was that you would not hire someone else, not that you would hire us, YSB, but you couldn't hire someone else. Could you comment on that? Yes. Interestingly, the plaintiff's complaint, the request for relief, is they request that, well, in their request for relief, they say that the Schneider plans can't be shared with the third party and that the Schneider plans can't be built by anybody else except YSB. By the time they reached trial, they made the allegation that the Huangs can't build any plans on their property, and the district court questioned opposing counsel during opening statement to really get that clear and asked opposing counsel whether the claim was that the Huangs could not use the plans or couldn't use any builder to build any plans on their property, and counsel said, yes, yes, and I cited that. Yes, yes to what? That the agreement was that you can't use another contractor to build? Correct, that you can't use another contractor to build any plans on the property. So the argument is really the inverse, the same thing, as saying that, I mean, if the Huangs are not obligated to hire YS to build a house on their property, then ipso facto, I think, it means they're free to hire anybody to build a house on their property, and I don't think it is, I mean, it would be obviously a punitive and liquidated type damage to say that the Huangs wouldn't be able to use any builder to build any house on their property unless it is YS, and the appellants argue that that should be inferable by these letters of intent, but there's no plain language in the letter of intent that says if the Huangs decide not to hire YS, they can't build a house on their property ever. What about the agreement? What do we do with paragraph 6? This one says that the contract has to be signed before Huang obtains title. Isn't that a condition preceding on him obtaining title? He obtained title without getting the contract, so is he in violation of this agreement? This was a very awkward arrangement, and in hindsight YSB would have been better advised just to have purchased all the property outright and then said here's what we're building. Do you want the house or don't you want the house? They didn't do it that way, but they did try to tie it in a particular way and said before you get title to the property, you're going to obligate yourself to sign a contract with us, and if you don't get the contract, we'll give you back your money on the property. That's paragraph 7. Well, paragraph 7 is if the property does not get subdivided for some reason, if the city does not approve that, then Huang gets their money back, their down payment of $220,000. But paragraph 6, you're right. Hindsight being 20-20, YS should have signed the construction contract in conjunction with transferring the land. Sure, but that last sentence says this contract will be, there's an is and a will. I think the is should be struck. This contract will be signed before Huang obtains title. And that is a recital of fact and or expectation. It's not an obligation? It's an expectation, but YS... Why isn't that enforceable? Because YS clearly waived that. YS transferred the property before they... Well, YS didn't have the property, right? It was ISI that had the property. Correct. That is... This seems to say, if you're going to go over and buy property from ISI, you have to sign it, you obligate yourself to sign a contract with us first before you obtain title. That would have sort of shored up the awkwardness between the ISI-YSB relationship. We should keep in mind that Yuval Sofer is the owner of YSBilt. He is the registered agent of ISI. ISI is actually owned by... His father-in-law. His father-in-law. Right. Who lives in Israel, who's totally removed from all of this. Sure. Again, it's an awkward relationship, but why isn't paragraph six enforceable? Did the district court address that paragraph? I don't believe so. I suggest that the parties just abandoned that provision. The parties abandoned it. Hoping everything would work out. Yes. And YS clearly understood that ISI was transferring the property before YS got around to signing the contract. I mean, the contract never got signed. It was negotiated over a period of a year following the land transfer, but... Okay. It was ignored. Was this a point, an issue in the lower court? I don't see that it was. No, Your Honor. And it was not defined in the contract claim, was it? It was not part of the pleadings or any of the claims in the lawsuit. This paragraph is addressed in the district court's opinion at page seven. It's at the bottom of page seven. Lines 17 to 20. Yes, the district court referred to that language that we're looking at there in paragraph six, but, again, just pointed out that it's letter of intent, promise to promise language, and it's not enforceable. Well, it seems to me that the district court suggests in both instances that these are merely agreements to agree, correct? Correct. So is a determination of an agreement to agree rather than a contract, is that a matter of de novo review in our court, or is that an abuse of discretion? I believe it's a mixed question of law. That doesn't answer the question. Can I look at this and say this is an agreement to agree, or do I have to say the district court had a chance to listen to the parties, look at the language. Evidently the language is not on its own clear and unambiguous and therefore accepted additional terms and additional evidence to determine what it was. Do I owe that determination some discretion? That's my question. Yes, Your Honor. I believe there was plenty of testimony surrounding the letters of intent, both of those documents, and to some extent those documents speak for themselves and they're both. Well, they speak for themselves, and I can, if in fact they speak for themselves and they're clear and unambiguous, then it would seem to me that I would say these are de novo review because then I can determine what they are as well as the district court can. But it seemed to me that in this particular situation, the district court had to, if you will, look at the letter of intent, look at this ISI guy LLC purchase agreement and take testimony about what it all meant or didn't mean, and after doing that came to the idea that it was an agreement to agree, which under Washington law is not enforceable. Is that true? That is true. The district court definitely listened to a lot of testimony by especially Yuval Sofer regarding both of the agreements. I mean, my worry with all of this is what it is the standard of review. I mean, we looked through the copyright plans and we looked at whether this was intrinsic or extrinsic and we were reviewing it for really abuse of discretion, clear error. Now we're looking at a contract. Was there an enforceable contract? Well, it's pretty easy if it's an enforceable contract. We determine that de novo except merely agreement to agree that determination. That's why I ask you the question, is that a de novo, is that a question of law, or is that a fact question? It's a little mixed, but I would say the weight of it is de novo because we can look at both of these agreements, especially the letter of intent dated April 16th specifically contemplates a future contract to be signed, so therefore it itself is not that contract. But doesn't paragraph 6 make the signing of that contract a condition precedence so that if there's a failure to contract, there's no obligation. I think the district court's right. This is an agreement to agree, but it says if we fail to agree, then you don't get to buy the property, the real property. That paragraph 7 regarding refunding the money is just if ISI... I got that. I think you're correct on that. So I'm only concerned about paragraph 6. Paragraph 6, that last sentence, this contract is, will be signed before HUANG obtains title, is a statement that YS and ISI... It's an agreement to agree. And so I think the district court is correct on that. It is an agreement to agree, so you can't force them to sign a contract with YS, with YSB. The question is, can they then buy the property? And is that enforceable by YSB? Is that only enforceable by ISI? Had the HUANGs, like, as of today, not bought the property yet, I think ISI would be in a good position to say, hold on, I'm not going to sell you the property because you haven't satisfied this condition yet. But ISI let the property go under SOFR's watch, and therefore ISI and SOFR clearly waived this statement that a contract would be signed, construction contract would be signed before... ISI was not a signatory to this contract. Is that correct? ISI was... I believe so.  It was a signatory... It was a tri-party contract. It was a tri-party contract? Did ISI claim that there was a breach? Never. And if I just may comment very briefly, inside of a few seconds, the appellees would request attorney's fees on appeal for the same reason as they requested them in the district court. There's five fogarty factors that are examined on a copyright infringement case in regards to attorney's fees. And the biggest one that I think is relevant to our case, I guess the biggest two are the fact that these two plans are quite obviously not substantially similar with regard to protected elements, but equally that the motivation behind YS's use for the copyright, it was all orchestrated after the fact, and it was obviously done with the intent to bully the Huangs into signing a construction contract, and that does not promote the advancement of original art. Thank you. Thank you. Mr. Hayden, I'm going to give you at least a minute, and I think you might be well advised to address the contract questions. Thank you. The contract question is also, well, it's what we have depended upon to say that the two contracts we depended upon to say that they were intending and expecting both parties, at least if you look at Kevin as the party, to buy the property and hire YS. Why did I sell him the property without verifying whether the condition in paragraph 6 was satisfied? YS is not a party. Well, I understand they're not a party, but they may be the only one withstanding to enforce this. YSB is a party to the contract as well. Well, maybe YSB needs to sue ISI for selling them the property without satisfying the condition precedent. Yes. Judge, that's not going to happen. Of course not. But that may emphasize what a close relationship they had, and so YSB certainly knew that ISI was selling them the property without satisfying the condition. I'm sure they all expected that that was not a waiver of the condition. Well, if they expected it was not a waiver, then why isn't the district court right that this is just an agreement to agree? Because an agreement to agree in Washington is enforceable to the extent that it's partially performed. Was that argued below? Yes. Where? I didn't see it. It's in our brief. Below, before the district court? Yes. Not up here. I realize you want to throw in a new argument here. This is not a new argument. It was argued below. It's part of our original trial brief. Where's the partial performance? That's between YSB and the Wangs. The arrangement to pay for the design and the payment for the design, that is the one contract calls for, and I think we're talking about the first one, the design contract, calls for, well, we're talking about both. One contract calls for all specifications and plans created and are considered proprietary and may not be shared, and there's a breach of that if you share. That's not a claim, was it? That wasn't asserted as a claim. No. That was part of the contract breach. I would like for you to specifically tell me what your contract claim was. Our contract claim was that they were obligated either to sell the property back or, if they couldn't make a deal with YSB, or hire YSB to prepare or build the plans that were part of the, that resulted from the first contract. Let me ask that question. I looked at the pretrial stipulation, and it sets forth exactly. It says, while the Wangs, on behalf of Kevin, were not obligated to enter into a construction agreement with YS, they were obligated not to enter into such an agreement with anyone else, either with or without the original plans. That's the sum and substance of your contract claim. Yes. That doesn't say they breached Paragraph 6 or the things you just talked about. That's the basis for that. There's nothing in the pretrial stipulation that suggests there was a claim or was based on part performance. It seems like this contract claim is kind of a continuum of different variations. I see what you're saying. It wasn't raised as something that we didn't argue about, and, indeed, there was an agreement on that point below, that if, indeed, there was part performance, it was no longer. In your brief, you don't even discuss any of this. You make a passing reference to part performance without any explanation whatsoever. I frankly didn't have any idea what that part performance was by reading the briefs. The part performance is the payment for the property, the execution and the sale of the property, and the performance of the design for which Mr. Sofer, who's YSB, was a participant. Can I address the bullying for a minute? The bullying? Yeah, the claim that this is a demonization of Mr. Yuval. Just because of the attorney's fees? It does, yes. Okay. I'll give you very briefly. All right. Use your way over time. We pointed out— Be careful what you ask for, by the way, they say. I know. I'll be vulnerable to questions. That's fine. Yuval, or Mr. Sofer, is painted as belligerent and hostile because he was trying to force a contract. There's no evidence that he intended or expected to do any contracting with someone for a different design or for his design at a steep discount. I mean, he had agreed with the son all the way through the program. The origin of the agreement between YS and the Hoangs was predicated on the business plan, which was YS would take care of all of the construction. That was the underlying essence. And when this failed, when the parents were unable to reach a deal or didn't want to reach a deal, the parties didn't reach a deal, the response by YS was, okay, well, you have two choices. You can contract with us for the original plans using the estimate of the original plans or something consistent with the estimate, or we will try to sell your property and the use of your plans to the best of our ability. That is not abusive. YSB did not hold out for a contract, use us, or I think the phrase is the highway or something to that effect. He did not, we did not lean or YS did not lean on Kevin to make the contract in the first place at P-12. The exhibit P-12 shows he wasn't willing to reduce the price and he found that the difference in the original negotiation might be impossible. I think we're aware of those facts, counsel. Okay. You're well over your time if you want to sum up. There are three main issues, all interrelated, although one is a contract and one is a contract issue and one is a copyright, but they're obviously related. The copyright claim is, I think, supported by virtue of the fact that we can and the evidence is that the original was copied. Counsel, you're really way over your time. You've got to just sum up and tell us what you'd like us to do. I would like you to reverse the decision on the copyright infringement and I would like you to at least agree with us that there was a reasonable ground given the evidence that we had that they wanted to use it in the first place. Counsel, I'm going to stop you. I'm sorry. You've gone way over your time and I don't think you quite followed my direction. I think we understand you'd like the judgment reversed and we understand your position. On all three grounds? Yes. Thank you. Okay. We thank counsel for the argument. YSB versus Wang is submitted.
judges: Bybee, N.R. Smith, Huck